UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| ALEX ZAMORA, | § | |
| | § | |
| *Plaintiff*, | § | |
| v. | § | EP-15-CV-00048-DCG-RFC |
| | § | |
| GC SERVICES, LP, | § | |
| | § | |
| *Defendant*. | § | |

## REPORT AND RECOMMENDATION

Before the Court is Defendant GC Services, LP's ("GC") Motion for Summary Judgment ("Motion") filed on September 8, 2017. (ECF. 145). On January 19, 2018, Plaintiff Alex Zamora ("Mr. Zamora"), *pro se*, filed a Response to GC's Motion (ECF. 149), and on February 16, 2018, GC filed a Reply. (ECF No. 151). Finally, on March, 23, 2018, pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 1(d) of Appendix C to the Local Rules, GC's Motion was referred to this Court. (ECF. 152). For the reasons that follow, this Court **RECOMMENDS that** GC's Motion be **GRANTED**.

### I.     BACKGROUND

GC employed Mr. Zamora as a unit manager at its Reliant Energy office in El Paso, Texas. (D. Ex. 1G). Mr. Zamora's position required frequent interaction with employees and customers. Specifically, Mr. Zamora must manage and resolve high pressure situations involving customers and employees, participate in disciplinary actions, supervise team members, and train other employees. (D. Ex. 1B).

On July 16, 2012, Mr. Zamora went to University Medical Center ("UMC") and was thereafter transferred to El Paso Psychiatric Center on July 25, 2012. (P. Exs. 1, 1A). The exact details surrounding Mr. Zamora's hospitalization and subsequent commitment to El Paso

1

Psychiatric Center are in dispute. (ECF. 145: 3, 149: 1, D. Ex. 7: 1–2, P. Ex. 1A). Following Mr. Zamora's trip to UMC, Mr. Zamora's father filed a request for personal leave of absence for Mr. Zamora on July 23, 2012. (D. Ex. 1C). The request form indicated that Mr. Zamora had a serious medical condition. (D. Ex. 1C). On July 27, 2012, Mr. Zamora's physician at El Paso Psychiatric Center sent GC a certification for his leave of absence. In this certification, Mr. Zamora was experiencing:

> [A]nxiety and suicidal thoughts; thoughts of wanting to hurt others. He was experiencing auditory hallucinations, racing thoughts, sleeping 3–6 hrs/wk. Inability to focus/concentrate.

(D. Ex. 1D).

On August 1, 2012, GC received Mr. Zamora's Fit for Duty Release form from El Paso Psychiatric Center signed by Nurse Soledad Flores. (D. Ex. 1F). The form only displayed a checked box, which indicated that Mr. Zamora was able to return to work without any restrictions on August 13, 2012. (D. Ex. 1F). Worried that this form was devoid of any substance, Meagan Conway, GC's general counsel, began a background check on Mr. Zamora. (D. Ex. 7: 2–4). Conway feared that Mr. Zamora may pose a safety risk for other employees. (D. Ex. 7: 2–4). In her research, Conway found that Mr. Zamora had been arrested and convicted of aggravated assault with a deadly weapon in July of 2011. (D. Exs. 1E, 2: 25–29, 3). Although the exact details surrounding Mr. Zamora's conviction are in dispute, the parties do not dispute the fact that Mr. Zamora was arrested and convicted of aggravated assault with a deadly weapon. (ECF. 149: 15, ECF. 145: 4. D. Ex. 2: 25–28).

Following this discovery, Conway attempted to call Mr. Zamora's physician at El Paso Psychiatric Center, but was unable to reach the physician. (D. Ex. 7: 3). The call was answered

by another El Paso Psychiatric Center employee, and what occurred during this conversation is in dispute. (D. Ex. 7: 3, P. Ex. 1C).

On August 7, 2012, Conway and Kim Jackson, the former Assistant Vice President of Employee Relations for GC, made the decision to terminate Mr. Zamora's employment. (D. Exs. 7: 4, 8: 3). Conway and Jackson feared that Mr. Zamora may be a threat to fellow GC employees. (D. Exs. 7: 2–4, 8: 2–4). According to GC, three days later on August 10, 2012, in a meeting with Isabel Cigarroa and Paul Gazeley, Mr. Zamora was terminated pursuant to instructions from Jackson. (D. Exs. 4: 48–50, 8: 3). In this meeting, for the first time, Mr. Zamora informed GC of his bipolar disorder and paranoid schizophrenia. (D. Ex. 4: 46–98). Cigarroa told Mr. Zamora that he was terminated because he posed a threat to other employees. (D. Exs. 7: 4, 8: 4).

Mr. Zamora disputes GC's version of events. First, Mr. Zamora, in his Response, points to his State Court Petition and indicates that on August 8, 2012, he informed Zoraida Femat, GC's Human Resources Generalist, that he required a modified work schedule, because his medication made him drowsy in the evening. (D. Ex. 6: 3). Further, once again pointing to his State Court Petition, Mr. Zamora argues that he was fired on August 8, 2012, and was never told by Cigarroa and Gazeley that he posed a threat to other employees. (ECF. 149: 15–16). Importantly, however, the parties do not dispute the fact that Mr. Zamora suffered from bipolar disorder and paranoid schizophrenia at the time of his termination.

Subsequent to his termination, Mr. Zamora filed a charge with the EEOC, and filed suit in El Paso state court on November 21, 2014. (D. Exs.1H, 6). In Mr. Zamora's First Amended Petition, Mr. Zamora alleged disability discrimination, retaliation, and failure to provide reasonable accommodations under the Americans with Disabilities Act ("ADA"). Plaintiff's First

Amended Petition and Request for Disclosure, Zamora v. GC Services LP, No. 2014-DCV-3721, ECF. 1, (210th Dist. Ct., El Paso County, Tex. Feb. 18, 2015). The case was removed to federal court on February 19, 2015. (ECF. 1). The district court granted GC's Motion to Dismiss on March, 28, 2015, holding that Mr. Zamora's suit was filed untimely. (ECF. 18). The Fifth Circuit reversed and remanded. (ECF. 46). GC now files this Motion alleging that:

> (1) Mr. Zamora cannot meet his *prima facie* case of discrimination under the ADA;
> (2) GC had a legitimate, nondiscriminatory reason for firing Mr. Zamora;
> (3) Mr. Zamora never requested a reasonable accommodation under the ADA; and
> (4) No reasonable accommodations can be made for Mr. Zamora because he posed a direct threat to others in the work place.

(ECF. 145).

## II. STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of fact exists when evidence is sufficient for a reasonable jury to return a verdict for the non-moving party, and a fact is material if it 'might affect the outcome of the suit.'" *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In deciding whether a genuine dispute as to material fact exists, a trial court considers all of the evidence in the record and "draw[s] all reasonable inferences in favor of the nonmoving party," but "refrain[s] from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

Procedurally, the party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the

record] which it believes demonstrate the absence of a genuine issue of material fact."[1] *EEOC v. LHC Group.*, 773 F.3d 688, 694 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). When the nonmoving party will bear the burden of proof at trial, the moving party may satisfy this responsibility by "point[ing] out the absence of evidence supporting the nonmoving party's case." *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990); *see also Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 544–45 (5th Cir. 2005).

If the moving party succeeds, "the onus shifts to the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *EEOC v. LHC Group*, 773 F.3d at 694 (internal quotation marks omitted) (citing *Celotex Corp.*, 477 U.S. at 324). However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Davis v. Fort Bend Cty.*, 765 F.3d 480, 484 (5th Cir. 2014) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (*en banc*) (*per curiam*)). In evaluating whether the parties have met their respective burden, "the Court considers only competent summary judgment evidence." *Reeves v. Wells Fargo Bank, NA*, No. EP-14-CV-00187-DCG, 2015 WL 11598711, at *1 (W.D. Tex. Sept. 4, 2015) (citing, *inter alia*, *Goodwin v. Johnson*, 132 F.3d 162, 186 (5th Cir. 1997)); *see also* Fed. R. Civ. P. 56(c).

Finally, the court is to construe liberally the briefs of *pro se* litigants and apply less stringent standards to them than to parties represented by counsel. *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006); *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995). Nevertheless,

---

[1] The Court, here, uses the terms "dispute" and "issue" interchangeably. *See* Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendment (stating that in the amended rule, "genuine 'issue' becomes genuine 'dispute.' Dispute better reflects the focus of a summary-judgment determination.").

a *pro se* party must still brief his issues. *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995). Further, "even *pro se* litigants must comply with the Federal Rules of Civil Procedure and present proper summary judgment evidence." See *Rolen v. City of Brownfield, Tex.*, 182 F. App'x 362, 365 (5th Cir. 2006) (citing *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980)); *see also EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) (noting that *pro se* litigants must present competent summary judgment evidence, as set forth in the Federal Rules of Civil Procedure). It is well settled that allegations in a plaintiff's complaint are not summary judgment evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). This is especially true here, where GC expressly warned Mr. Zamora that he must submit evidence disputing the defendant's version of the facts if he wished to survive summary judgment.[2]

### III. DISCUSSION

**A. Discrimination Termination under the Americans with Disabilities Act**

The ADA prohibits discrimination against a "qualified individual with a disability on the basis of that disability." 42 U.S.C. § 12112(a). In a discriminatory-termination action under the ADA, the employee may either present direct evidence that he was discriminated against because of his disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under the burden-shifting analysis, a plaintiff must establish a *prima facie* case of discrimination. *EEOC v. Chevron Philips Chem. Co.*, 570 F. 3d 605, 615 (5th Cir. 2009). To establish a *prima facie* discrimination claim, a plaintiff must show: (1) that he has a disability; (2) that he was qualified for the job; and

---

[2] GC, per standing order, sent Mr. Zamora a Pro Se Notice (ECF No. 146). The Notice provided Mr. Zamora with clear details and instructions regarding what evidence he needed to produce for summary judgment; however, in many instances, Mr. Zamora has failed to follow those instructions. Nevertheless, in an abundance of caution, the Court will construe his brief liberally.

(3) that he was subject to an adverse employment decision on account of his disability. *EEOC v. LHC Group, Inc.*, 773 F.3d 688, 697 (5th Cir. 2014).

If the plaintiff successfully satisfies his *prima facie* case of discrimination, then the defendant must articulate a legitimate, nondiscriminatory reason for termination. *Id.* at 694. If the defendant meets this burden of production, the burden shifts back to the plaintiff to show that defendant's proffered reason is pretextual. *Id.* at 702. In the Rule 56 context, a *prima facie* case of discrimination plus a showing that the proffered reason is pretextual is typically enough to survive summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, Inc., 530 U.S. 133, 146–48, 150 (2000) (reaching a similar conclusion in the Rule 50 context, which mirrors the standard for summary judgment).

In the present case, Mr. Zamora has failed to submit direct evidence of disability discrimination. Therefore, Mr. Zamora's disability discrimination claim will be evaluated under the burden-shifting analysis.

**1. Disability**

In its Motion, GC first argues that Mr. Zamora failed to satisfy the first element of his *prima facie* case. Specifically, Mr. Zamora never told anyone at GC about his disabilities, Mr. Zamora does not even believe himself to be disabled, and Mr. Zamora's impairments do not meet the standards for being disabled under the ADA. ( ECF. 145:9–10). In response, Mr. Zamora argues that he satisfies the first element because of his bipolar disorder and paranoid schizophrenia. (ECF. 149:2). In an ADA case, the relevant time for assessing the existence of a disability is the time of the adverse employment action. *EEOC v. Chevron Phillips Chemical Co., LP*, 570 F.3d 606, 618 (5th Cir. 2009).

Under the ADA, a disability is "(A) a physical or mental impairment that substantially limits one or more of the major activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

As an initial matter, whether Mr. Zamora qualifies as disabled under the ADA will be evaluated under subsection A of 42 U.S.C. § 12102(1). Mr. Zamora has failed to provide any evidence that suggests a record of impairments under subsection B, and he has failed to provide any evidence showing that GC regarded him as disabled under subsection C.

Under subsection A, a plaintiff must show that he has a physical or mental impairment. 42 U.S.C. § 12102(1)(A). A mental impairment means "[a]ny mental or psychological disorder, such as an intellectual disability...organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2). However, simply having an impairment is insufficient to make one disabled; a plaintiff must show that the impartment substantially limits a major life activity. *EEOC v. Chevron Phillips Chemical Co., LP*, 570 F.3d 606, 614 (5th Cir. 2009).

Major life activities include, but are not limited to: caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. 42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1630.2(i)(1)(i). Moreover, substantially limited means an impairment that "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii).

The ADA was amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), in order to broaden its definition of what qualified as a disability. ADA Amendments Act of 2008, Pub. L. No. 110–325, 122 Stat. 3553. This amendment was

undertaken in response to court decisions that Congress felt "had created an inappropriately high level of limitation necessary to obtain coverage under the ADA." *Id*. at 3554. Thus, the ADAAA directs that "[t]he definition of disability in this Act shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act." *Id*.

Under the ADAAA, the definition of disability now includes impairments that are episodic or in remission if they would substantially limit a major life activity when active. *Id*. Further, under the applicable federal regulation enacted after the ADAA "major depressive disorder, bipolar disorder, post-traumatic stress disorder, obsessive compulsive disorder, and schizophrenia substantially limit brain function." 29 C.F.R. § 1630.2(j)(3)(iii). Finally, mitigating measures such as medication and assistive technology are irrelevant when assessing whether impairments substantially limit a person's major life activity. ADA Amendments Act of 2008, § 4, § 3(4)(E)(1), 122 Stat. 3553, 3556.

Mr. Zamora has raised a genuine issue of material fact as to whether he is disabled under the ADA. In Mr. Zamora's Psychiatric Evaluation from El Paso Psychiatric Center, Mr. Zamora was suicidal and Mr. Zamora alleged that he faced sexual harassment from coworkers and from the nurses and security guards at UMC. (P. Ex. 1A). Finally, the report indicated that Mr. Zamora wanted to punch a fellow employee. (P. Ex. 1A). Further, in Mr. Zamora's certification from El Paso Psychiatric Center, the physician noted that Mr. Zamora was experiencing anxiety, suicidal thoughts, and thoughts of wanting to hurt others. (D. Ex. 1D). Mr. Zamora was also experiencing auditory hallucinations, racing thoughts, sleeping only three to six hours per week, and had difficulties with concentration. (D. Ex. 1D). Finally, Mr. Zamora was diagnosed with being bipolar and a paranoid schizophrenic. (D. Ex. 2:44).

The impairments exhibited by Mr. Zamora satisfy the requirements listed under the ADA and the ADAAA. First, as mentioned earlier, bipolar disorder and paranoid schizophrenia substantially limit brain functions. 29 C.F.R. § 1630.2(j)(3)(iii). Second, according to the physician's certification from El Paso Psychiatric Center, Mr. Zamora's impairments affect numerous major life activities such as seeing, hearing, sleeping, thinking, and concentrating. Thus, viewing the evidence in the light most favorable to Mr. Zamora, a reasonable jury can find Mr. Zamora disabled.

### 2. Qualification

GC argues that Mr. Zamora fails to meet the second element of his *prima facie* case because Mr. Zamora was not qualified for the job he held. Specifically, Mr. Zamora cannot meet the essential functions of a unit manager because he presented a threat to the safety of other employees in the work place. (ECF. 145: 10–12, 16–19, ECF. 151: 16, D. Ex. 1B).

To show he was qualified for his position as a unit manager, Mr. Zamora must show that either: (1) he could perform the essential functions of the job in spite of his disabilities; or (2) that a reasonable accommodation of his disabilities would have enabled him to perform the essential functions of the job. *EEOC v. LHC Group*, Inc., 773 F.3d 688, 691 (5th Cir. 2014) (citing *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1093 (5th Cir.1996) (per curiam)); 42 U.S.C. § 12111(8).

A function is essential if it bears more than a marginal relationship to the employee's job. *EEOC v. LHC Group*, Inc., 773 F.3d at 691. In determining the essential functions of a position, "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential

functions of the job." 42 U.S.C. § 12111(8); *Stockton v. Christus Health Southeast Texas*, 2017 WL 1287550, NO. 1:15-CV-333 * 8 (E.D. Tex. Feb. 3, 2017) (slip copy).

Further, an individual is not qualified for a job if there is a genuine substantial risk that he or she could be injured or could injure others, and the employer cannot modify the job to eliminate that risk. 42 U.S.C. § 12113(b); *Molina v. DSI Renal, Inc.*, 840 F. Supp.2d 984, 996 (W.D. Tex. 2012) (citing *Chandler v. City of Dallas*, 2 F.3d 1385, 1393 (5th Cir.1993)). Whether one is a direct threat is complicated and fact intensive. *Molina*, 840 F. Supp.2d at 999 (*citing Rizzo v. Children's World Learning Ctr.*, 84 F.3d 758, 764 (5th Cir.1996)). The employer must make an individualized assessment of the individual's present ability to safely perform the essential functions of the job. *EEOC v. E.I. Du Pont de Nemours & Co.*, 480 F.3d 724, 731(5th Cir. 2007) (quoting *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 86, (2002)).

A genuine issue of material fact exists as to whether Mr. Zamora presented a threat to the safety of other employees. Mr. Zamora's Fit for Duty Release form, signed by Nurse Flores, contained a checked box, which indicated that Mr. Zamora can return to work without restrictions. (D. Ex. 1D). Further, in the Physician Discharge Order Inquiry drafted on August 6, 2012, Nurse Flores indicated that Mr. Zamora's mood was good, and Mr. Zamora had clear, coherent, and goal oriented thinking. (P. Ex. 2). The Discharge Order also indicated that Mr. Zamora was free of paranoid or delusional thoughts, and Mr. Zamora no longer had thoughts of hurting others. (P. Ex. 2).

While it is true that Mr. Zamora displayed serious medical concerns during his time at El Paso Psychiatric Center, and Mr. Zamora was convicted of aggravated assault with a deadly weapon, a reasonable jury can find that Mr. Zamora was not a threat.

### 3. Adverse Employment Decision

Finally, GC argues that it did not terminate Mr. Zamora on account of his disabilities. (ECF. 145: 12). Specifically, GC was not aware of Mr. Zamora's disabilities and only terminated him because he posed a genuine threat to other employees. (D. Ex. 2: 39–40, D. Ex. 4:97, D. Ex. 7: 4, D. Ex. 8: 3). In order for Mr. Zamora to survive summary judgment, he must show that he was subjected to an adverse employment decision on account of his disabilities. *EEOC v. LHC Group*, 773 F.3d 688, 700 (5th Cir. 2014).

As an initial matter, Mr. Zamora failed to produce competent summary judgment evidence regarding when he was terminated and when he first told GC of his disabilities. Mr. Zamora cannot point to his pleadings as summary judgment evidence. Moreover, Mr. Zamora has failed to provide any evidence that GC terminated him because of his disabilities. Conway and Jackson made their decision to terminate Mr. Zamora before Mr. Zamora notified GC of his disabilities. The decision to terminate Mr. Zamora occurred on August 7, 2012, three days before Mr. Zamora told GC of his disabilities. Conway and Jackson terminated Zamora because he posed a genuine risk to other employees. (D. Exs. 7:2–4, 8: 2–4). Viewing the evidence in the light most favorable to Mr. Zamora, Mr. Zamora has failed to show that he was terminated on the basis of his disabilities. Therefore, Mr. Zamora has failed to meet his *prima facie* case of discrimination.

Even assuming Mr. Zamora met his *prima facie* case of discrimination, summary judgment still should be granted. GC has met its burden of production and presented a nondiscriminatory reason for terminating Mr. Zamora: Mr. Zamora was a threat to its employees. (D. Exs. 7: 3–4, 8: 2–3). The burden shifts back to Mr. Zamora to show that GC's nondiscriminatory reason was pretextual, and Mr. Zamora has not met this burden. Mr. Zamora

failed to present any evidence or present any arguments that GC's nondiscriminatory reason for terminating him was pretextual. Viewing the evidence in the light most favorable to Mr. Zamora, summary judgment should be granted.

## B. Reasonable Accommodations

Mr. Zamora's discrimination claim and failure to accommodate claim will be determined separately. *See EEOC v. Accentcare Inc.*, 2017 Wl 2691240, No. 3:15-CV-3157-D at *5 (N.D. Tex. June 21, 2017). In its Motion, GC argues that it did not have knowledge of Mr. Zamora's disabilities because Mr. Zamora requested an accommodation only after he was terminated, and Mr. Zamora is not a qualified individual under the ADA because he posed a direct threat to other employees. (ECF 145: 16–17). In opposition, Mr. Zamora argues that GC was on notice of his disabilities when he requested a modified work schedule, and he did not pose a threat to GC's employees. (ECF. 149: 12, 17, P. Exs. 1D, 2, D. Ex. 6).

The ADA requires employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *Claiborne v. Recovery Sch. Dist.*, 690 F. App'x 249, 253–54 (5th Cir. June 7, 2017) (citing 42 U.S.C. § 12112(b)(5)).

To establish a disability accommodation claim, a plaintiff must prove that: (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations. *Feist v. La. Dep't. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013).

### 1. Whether GC Services had knowledge of Mr. Zamora's disabilities before he was terminated

An employee who needs an accommodation because of a disability has the responsibility of informing his employer. *EEOC v. Chevron Philips Chem. Co*., 570 F. 3d 605, 621 (5th Cir. 2009) (citing *Taylor v. Principal Fin. Group*, 93 F.3d 155, 165 (5th Cir.1996)). The employee must explain that the adjustment in working conditions or duties he is seeking is for a medical condition-related reason, but the employee does not have to mention the ADA or use the phrase "reasonable accommodation." Plain English will suffice. *Chevron Philips Chem. Co*., 570 F. 3d at 621. When the disability, resulting limitations, and necessary reasonable accommodations are not apparent to the employer, as it is often the case with mental disabilities, the employee must specify the disability and its necessary reasonable accommodations. *Taylor*, 93 F.3d at 165. Thus, because of the amorphous characteristics of mental disabilities, the initial burden for requesting reasonable accommodations falls upon Mr. Zamora. *Id*.

Finally, once the employee presents a request for an accommodation, the employer is required to engage in the interactive process so that together they can determine what reasonable accommodations might be available. *Chevron Philips Chem. Co*., 570 F.3d at 622.

In this case, Mr. Zamora has failed to notify GC of his disabilities. In the sworn declarations of Conway and Jackson, Conway and Jackson determined that Mr. Zamora was a threat to other employees and made the decision to terminate him on August 7, 2012. (D. Exs. 7:2–4, 8: 2–4, 4: 49–50). Mr. Zamora informed GC of his disabilities for the first time on August 10, 2012. (D. Exs. 4: 49–50,7: 2–4). While Mr. Zamora indicates that he informed GC about his disabilities on August 8, 2012, as mentioned earlier, Mr. Zamora cannot point to his State Court Petition as competent summary judgment evidence. Even assuming his evidence is admissible,

Mr. Zamora still informed GC of his disabilities after the decision to terminate him was already made.

Further, Mr. Zamora's physician certification was insufficient to put GC on notice of his disabilities. See *Taylor*, 93 F.3d at 165 (holding that a request for accommodations for a disability not apparent to the employer without indicating the disability, its resulting limitations, or any specific necessary accommodations is too ambiguous to constitute a formal request for accommodations under the ADA). While the certification noted Mr. Zamora's impairments, the document does not diagnose Mr. Zamora with a disability, nor does it tell GC of any subsequent limitations or necessary accommodations. (D. Ex. 1D). Mr. Zamora has failed to present any summary judgment evidence which would allow a reasonable fact finder to conclude that GC discriminated against him by failing to accommodate his disabilities. Finally, because Mr. Zamora has failed to show that GC knew of his disabilities before terminating him, the question regarding whether Mr. Zamora is a qualified individual is moot.

## V. CONCLUSION

In sum, Mr. Zamora failed to meet his *prima facie* case of disability discrimination, and Mr. Zamora did not notify GC of his disabilities before his termination. Accordingly, the Court **RECOMMENDS** that GC's Motion (ECF. 145) be **GRANTED**.

**SIGNED** this 24th day of April, 2018.

ROBERT F. CASTANEDA
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**